IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-04-554 |
| | § | C.A. No. C-06-54 |
| MATTHEW FREEZE, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE,**
**SET ASIDE OR CORRECT SENTENCE**
**AND DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Matthew Freeze's ("Freeze") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 52),[1] which was received by the Clerk on August 22, 2005. The Court ordered the government to respond, and the government filed a response in which it also moves for dismissal of Freeze's motion. (D.E. 60, 61). To date, Freeze has not filed a reply. As discussed in detail herein, one of Freeze's claims, which relates to his sentencing, is subject to dismissal because he waived his right to file that claim. His other claims, which challenge his plea and waiver, fail on their merits. For these reasons, the Court DENIES his § 2255 motion. Additionally, the Court DENIES Freeze a Certificate of Appealability ("COA").

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

## II. FACTS AND PROCEEDINGS

On September 22, 2004, Freeze was charged in an indictment with four counts of mail fraud, in violation of 18 U.S.C. § 1341. The indictment alleged that he had maintained a post office box in

[1] Dockets entries refer to the criminal case, C-04-cr-554.

Corpus Christi, Texas, at the Flour Bluff station. From on or about May 23, 2001, and continuing to on or about March 7, 2002, Freeze devised a scheme to defraud others and obtain money and property by means of false and fraudulent pretenses through the use of the United States Postal Service. Specifically, using his Flour Bluff Post Office Box, he established accounts at several banks and at Verizon in the names of other individuals. He also obtained property by ordering items on a computer via the Internet and using fraudulently obtained credit cards to pay for those items, directing the shippers of such items to send them to his Post Office Box.

On November 29, 2004, Freeze pled guilty to Count One pursuant to a written plea agreement with the government. (D.E. 16, 17). In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to move for the dismissal of the remaining counts at sentencing, to recommend that he receive the maximum credit for acceptance of responsibility, and to recommend a sentence within the guideline range. (D.E. 17 at ¶ 2). The government also agreed to recommend a reduction in his sentence should he provide substantial assistance. (D.E. 17 at ¶ 1).

The plea agreement included a voluntary waiver of Freeze's right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) the sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines, which had not been requested by the United States as set forth in Title 18 U.S.C. § 3742(b). Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 17 at ¶ 6) (emphasis in original). The agreement was signed by both Freeze and his counsel.

At Freeze's rearraignment, the Court questioned Freeze under oath to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and right to file a § 2255 motion:

> **THE COURT:** Now you're waiving two other rights that I discussed with Ms. Luna [another defendant who was rearraigned during the same proceeding]. Two other rights that you're waiving that are personal to you and only belong to you are the right to appeal, you're waiving that, unless I give you a sentence that is higher than five years, or unless I upwardly depart from the guidelines without a motion from the U.S. Attorney; plus you are giving up your right to post-conviction remedy, which is also known as a writ of habeas corpus, or a statutory 2255. And even though you're giving up your right to appeal, the U.S. Attorney keeps her right to appeal. Do you understand these waivers?
>
> **THE DEFENDANT**: Yes, Your Honor.

(D.E. 39, Rearraignment Transcript ("R. Tr.") at 26).

Additionally, the written plea agreement was summarized by an Assistant United States Attorney, including a statement regarding the waiver: "Also, the Defendant knows that he has a right to appeal under Title 28 Section 2255, to collaterally attack a conviction, and he waives that right also." (R. Tr. at 28). Freeze testified that the summarized agreement was his plea agreement, that it was his signature on the last page, and that he read it completely and discussed it completely with his attorney before he signed it. (R. Tr. at 30). The Court then inquired again to ensure he understood the waiver of his 2255 rights:

> **THE COURT:** One other thing you're giving up by way of post-conviction remedy, such as a 2255 or writ of habeas corpus, you would ordinarily be able to set aside your conviction and/or your sentence by complaining about constitutionality, jurisdictional issues, or ineffective assistance of counsel. But if you go forward today, you give up that right altogether. Do you understand that?
>
> **THE DEFENDANT:** Yes, Your Honor.

(R. Tr. at 30).

Freeze further testified that no one had promised him anything that was not in the plea agreement in return for his plea. (R. Tr. at 30). He averred that he understood the Court was not a party to the plea agreement and that it was not binding on the Court in any way. (R. Tr. at 30-31). It is clear from the foregoing that Freeze's waiver of § 2255 rights was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR") and sentencing occurred on February 4, 2005. (D.E. 23). The PSR calculated the base offense level to be a 6, but added three enhancements based on specific offense characteristics. First, the PSR increased the offense level by 20 levels because the estimated loss was more than $ 7 million, but less than $20 million, pursuant to U.S.S.G. § 2B1.1(b)(1)(K). Second, the level was increased by two because it involved sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(9)(C). Third, the offense level was increased by two levels because it involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, pursuant to U.S.S.G. § 2B1.1(b)(10)(C)(i). The adjusted offense level was therefore 30. After a three-level reduction for acceptance of responsibility, the total offense level was 27. Combined with Freeze's criminal history category of V, the resulting guideline range for a term of imprisonment was 60 months.

Freeze's counsel filed a number of written objections to the PSR. At the February 4, 2005 sentencing, Freeze's counsel indicated that most of the objections had been resolved, but that two remained. (D.E. 40, Sentencing Transcript ("S. Tr.") at 3). The Court granted several of the objections, ultimately determining that the proper offense level should have been 19, instead of 27,

and that Freeze's criminal history should have been IV, instead of V. The revised offense level and criminal history category produced a guideline range of 46 to 57 months. (S. Tr. at 23-24).

The Court sentenced Freeze to 57 months in the custody of the Bureau of Prisons, to be followed by a three-year supervised release term, and imposed restitution in the amount of $64,030.83, no fine, and a $100 special assessment. (S. Tr. at 31; D.E. 23, 29). The Court also imposed a number of additional terms of supervised release, in addition to the Court's general terms, and ordered that the sentence run consecutive to the state sentence that Freeze was serving at the time of sentencing in the instant case. (S. Tr. at 31-32). Judgment of conviction and sentence was entered February 24, 2005. (D.E. 29).

On February 17, 2005, Freeze filed a motion for reduction and correction of sentence, which the Court denied in an order entered March 22, 2005. (D.E. 27, 33). He later filed a motion for a recommendation regarding his placement, which was also denied. (D.E. 37, 38). Despite his waiver of appellate rights, Freeze also filed a timely notice of appeal. (D.E. 28). He later moved to dismiss his appeal, and the Fifth Circuit consequently dismiss his appeal as of November 29, 2005. (D.E. 50). Freeze's timely § 2255 motion was received by the Clerk on February 6, 2006. (D.E. 52).

**III. MOVANT'S ALLEGATIONS**

In his motion, Freeze asserts two different claims of ineffective assistance of counsel. First, he claims that his counsel, Assistant Federal Public Defender Jason Bradford Libby, was ineffective because he did not inform Freeze of the correct range of punishment and Freeze did not learn of the correct range until the rearraignment. He claims that this fact renders his guilty plea, and his waiver of appellate and § 2255 rights, unknowing and involuntary. Second, he states that counsel "promised" that the AUSA would recommend the low end of the guidelines. He claims that after he reviewed the plea agreement and did not find a clause requiring a recommendation of the low end of the guidelines,

that his counsel "assured [Freeze] that they had an understanding and the government would recommend the low-end." (D.E. 52 at 5).

Freeze's motion also contains two additional grounds for relief. In his third ground, he claims that his sentence was in excess of the maximum authorized by law. In support of this claim, he argues that he was sentenced to 57 months and 3 years of supervised release. He argues that if supervised release was revoked, his resulting sentence would be 81 months, which he claims is over the statutory maximum. In his fourth and final ground, Freeze claims that he was incompetent at the time of his conviction, and therefore his guilty plea and resulting sentence are void. (D.E. 52 at 6). The government has moved for the dismissal of Freeze's motion on the grounds that it is barred by his waiver of § 2255 rights. The government has also addressed his claims on their merits and contends that the record in the case conclusively shows that no relief is appropriate as to his underlying allegations.

For the reasons set forth herein, Freeze's claims fail.

## IV. DISCUSSION

### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of

justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

The Court need not address whether Freeze has procedurally defaulted his claims by failing to pursue his appeal. Rather, the Court concludes that he validly waived his third claim, which is unrelated to his plea, and thus it does not reach the merits of that claim. See infra Section IV.D.; United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights); United States v. McKinney, 406 F.3d 744 (5th Cir. 2005) (enforcing a waiver of appeal rights that was signed prior to the issuance of Booker).

His claims that he received ineffective assistance of counsel when entering into the plea agreement, however, fall outside the scope of his § 2255 waiver, because they are a direct challenge to the validity of the plea and, thus, the waiver. See, e.g., United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"). Similarly, his claim that he was incompetent at the time of his plea could potentially be grounds for invalidating the plea. Thus, the Court turns first to these claims.

**B. Alleged Ineffective Assistance of Counsel As to Plea**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th

Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Freeze argues that his attorney was deficient for failing to tell him of the correct range of punishment prior to rearraignment, and for promising him that the government would recommend the low end of the guidelines. In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Freeze must show that, absence his counsel's deficiencies, he would have proceeded to trial. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). This is a showing that cannot be met here.

**1. Claim That His Counsel Failed to Advise Him of His Potential Sentence**

In his first claim of ineffective assistance, Freeze argues that his counsel misinformed him concerning the possible sentence he faced. Freeze's claim that his counsel may have misinformed him concerning the maximum possible sentence he faced, prior to his rearraignment, finds some support in the record. As an initial matter, the electronic recording of the arraignment indicates that Freeze was told that he faced a 20-year term of imprisonment on each of the four counts, when, in fact, he faced a five-year term of imprisonment on each count. (Recording of October 19, 2004 arraignment before United States Magistrate Judge Cooper-Hill at 9:07-9:08).

Additionally, the rearraignment transcript indicates that there was initially the same confusion about the maximum term of imprisonment. The confusion apparently stemmed from the fact that the maximum punishment for mail fraud in 2002, the date of the offense, was 5 years, unless the violation affected a financial institution, in which case the maximum term of imprisonment was 30 years. In 2002, however, the statute was amended by the White-Collar Crime Penalty Enhancement Act of 2002, and the statutory maximum for the offense was increased from 5 years to 20 years.[2] (R. Tr. at 15-16, 21-26; see 18 U.S.C. § 1341, historical notes. Indeed, Mr. Libby even stated that his understanding prior to the rearraignment was that the counts were each subject to a 20-year maximum. (R. Tr. at 24).

Despite the confusion, however, Freeze was advised, ***prior to entering his guilty plea,*** of the true range of punishment. (See generally R. Tr.). After being informed of the correct statutory maximum, he persisted in his guilty plea. A defendant suffers no prejudice due to receiving misinformation from his attorney where the plea colloquy reflects that the district court corrected any such misinformation. See Lott v. Hargett, 80 F.3d 161, 167-68 (5th Cir. 1996). Thus, even if his counsel failed to properly inform him of the possible maximum sentence he could receive, it is clear that any misinformation Freeze received from his attorney regarding his sentence was corrected by this Court prior to its acceptance of his guilty plea.

Significantly, the rearraignment transcript clearly establishes that Freeze's decision to plead guilty was his own and that it was entirely voluntary. At his rearraignment, Freeze testified that he had had enough time to talk with his attorney, that his attorney had answered all of his questions, that his attorney came to see him in jail and took his phone calls, and that he was satisfied with the advice and efforts of his attorney. (R. Tr. at 8-9). The Court informed Freeze of the various trial rights available

---

[2] The 30-year maximum for a violation affecting a financial institution remained unchanged.

to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights. (R. Tr. at 11-14).

Consistent with Rule 11, Fed. R. Crim. P., the Court explained to Freeze the maximum punishment that he might receive. Specifically, the Court informed him that he faced a mandatory maximum of five years in prison for each count, for a total possible of 20 years, and a maximum fine of $ 250,000 on each of the four counts. The Court also informed him that there was a mandatory $100 special assessment on each count, a maximum supervised release term of three years, and restitution in the amount of $64,030.83. (R. Tr. at 21-23). Freeze testified that he understood. (R. Tr. at 23). After confirming that there was a written plea agreement, the Court informed Freeze that his five-year maximum applied only to the one count to which he would be pleading guilty. (R. Tr. at 24-25). Freeze testified that he understood. (Id.).

Freeze testified that no one had promised him anything that was not in the plea agreement in return for his plea, that he understood that if his sentence was more severe than he expected, he would still be bound by his plea. (R. Tr. at 30-31). He testified that he understood that the Court was not a party to the agreement and was not bound by it in any way. (R. Tr. at 30-31). He also testified that he understood that the Court did not necessarily share his attorney's opinion of the guidelines and how they would apply in his case. (R. Tr. at 20).

Freeze's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Put simply, Freeze's sworn statements preclude the relief he seeks here. He knew of the potential punishment he faced before he entered his guilty plea, he knew that any estimates by his attorney were not binding

on the Court, and his plea was knowing. Moreover, he testified that his decision to plead guilty was voluntary and that no one had promised him anything in exchange for his guilty plea. His claim now that he would not have pleaded guilty had he known of his true sentencing exposure is directly contradicted by his statements under oath.

It is also significant that Freeze does not allege, let alone show, that he would have proceeded to trial instead of pleading guilty, had he known prior to his rearraignment that his maximum sentence on each count was 5 years instead of 20 years. Indeed, Freeze does not claim – even now – that he is not guilty. Moreover, Freeze had quickly confessed to police and there was substantial physical evidence from his computer and elsewhere showing the fraud that he had engaged in. Because he does not claim he was innocent or that he would have prevailed at trial, he cannot show prejudice.

Notably, had he been convicted after a jury trial, his sentencing would have been more harsh. He would have had the same offense level, except that he would not have received a three-level reduction for acceptance of responsibility. Thus, his resulting offense level would have been high enough to result in a guideline range of 60 months on each of four counts. Instead, he faced -- and received -- a maximum sentence of 57 months on only one count as a result of his plea agreement. all of these reasons, it simply does not make sense that he would have made the choice to go to trial, instead of choosing -- quite logically -- to plead guilty.

In short, Freeze has failed to show prejudice as a result of any deficiency by counsel. This claim therefore fails.

**2. Counsel's Alleged "Promise" That the Government Would Recommend the Low End of the Guidelines**

The same lack of prejudice that defeats his claim regarding his counsel's failure to explain his sentencing exposure, also dooms his second ineffective assistance claim. As noted, Freeze claims that his attorney "promised him" the government would make a recommendation for a sentence at the

lowest end of the guideline range. This claim is, once again, belied by his testimony at the rearraignment, where he told the Court under oath that no one had promised him anything not in the plea agreement. (R. Tr. at 30-31).

This claim fails for additional reasons, as well. First, Freeze could proceed on a claim that he was "promised" a sentence only under narrow circumstances. See United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998). Specifically, a defendant may seek habeas relief on the basis of alleged promises, even though inconsistent with his representations in open court, by proving: (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom the promise was made; and (3) the precise identity of an eyewitness to the promise. 132 F.3d at 1110. A defendant is entitled to an evidentiary hearing on the issue if he can produce evidence showing the merit of his allegations, typically in the form of an affidavit from a reliable third party. Id. Freeze has not alleged any facts about the identity of any witnesses to the promise, and has not provided any evidence showing the merit of his allegations. Thus, he would be unable to obtain relief under the Cervantes exception.

Moreover, even if the government had made a recommendation at the low end of the guidelines, that recommendation would not have been binding on this Court. Indeed, given the Court's comments at sentencing, the Court's imposition of the high end of the guidelines was likely no matter what the government's recommendation. (See S. Tr. at 14 (describing identify theft as a "brutal" thing that "destroys" people); S. Tr. at 15 (noting Freeze's many prior convictions and noting that his conduct in the case had been "a continued effort to con")).

In short, it is clear that Freeze cannot prove the prejudice prong of the Strickland inquiry as to either of his claims, and it is unnecessary to determine whether his counsel's performance was deficient. His claims of ineffective assistance in the plea process fail.

**C. Freeze's Competency**

In addition to his ineffective assistance claims, Freeze also challenges the validity of his plea on the grounds that he was incompetent to enter it. The record in this case does not support his assertion that he was incompetent at the time of his plea. The PSR indicates that Freeze voluntarily sought a mental health evaluation at the age of 18 after being told by many of "significant others" that he was a "sociopath." He was also evaluated when he entered the Texas prison system. The PSR indicates that Freeze advised that both evaluations found him to be "stable." (PSR at ¶ 50). Additionally, Freeze explicitly told the Court that he was competent to proceed – at both the rearraignment and sentencing – and his counsel agreed. (R. Tr. at 8-9; see also S. Tr. at 2-3 (both Freeze and his counsel expressing opinion that Freeze was and remained competent)).

In his § 2255 motion, however, Freeze claims that he was actually diagnosed by TDCJ officials as suffering from a series of disorders, and that two of these diagnoses – depression and anxiety disorder – were allegedly made before Freeze pled guilty. (D.E. 52 at 6). He claims that he has since been prescribed Haldol[3] and has been transferred to a psychiatric facility. When a court has a reason to believe a defendant may be incompetent, or has doubts about competency, it must conduct a competency hearing. Deville v. Whitley, 21 F.3d 654, 656-57 (5th Cir. 1994). In order to be competent to enter a plea, a defendant must have sufficient present ability to consult with his counsel and must have a rational and factual understanding of the proceedings against him. Id. (internal citations omitted).

Nothing in the record suggests that Freeze did not have the ability to consult with his attorney or that he did not understand what was happening on November 29, 2004. Indeed, the record at

[3] Haldol is a brand name for the generic drug haloperidol, an antipsychotic medication, according to the Department of Health and Human Services' Drug Database, available at www.healthfinder.gov/library.

rearraignment (and again at sentencing) both indicate that Freeze was participating in decision-making with his counsel, and that he understood the proceedings and what was happening in them. Indeed, the record reflects – and the Court recalls – a highly intelligent defendant who was able to express himself and his thoughts clearly and cogently to the Court. Shortly after sentencing, he submitted a pro se motion for reduction of sentence, in which he clearly indicated an understanding of the proceedings against him, and made no mention of any purported mental illness. (See D.E. 27). He also submitted a well-constructed letter to the Court mere days after sentencing, which was filed with his PSI. In that letter, he states that he is posing "strictly rhetorical" questions and does not expect an answer. He thanks the Court "for a judgment that [he] believe[s] was just and fair," yet states that he believed he deserved leniency and that he was upset that the Court did not believe his efforts at rehabilitation were sincere. This letter, like his pro se motion, and all of his comments at the rearraignment and sentencing, clearly show that he understood the proceedings against him.

His claim of incompetency is without merit. See also United States v. Benavides, 793 F.2d 612, 616 (5th Cir. 1986) (trial court did not abuse its discretion by refusing to allow defendant to withdraw guilty plea after learning he had been taking "Elavil, a medication that caused paranoia and otherwise impaired his mental faculties," where nothing about his conduct or statements gave the district court reason to believe he was not competent).

Because the Court concludes that Freeze's challenges to the validity of the plea agreement fail, his plea agreement, and his waiver of § 2255 rights contained therein, is valid and enforceable. Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claim.

**D. Waiver of § 2255 Rights**

As noted, it is clear from the rearraignment that Freeze understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is

required for his waiver to be enforceable. (R. Tr. at 18-19). See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Again, Freeze's statements under oath are entitled to a strong presumption of truthfulness. Wilkes, 20 F.3d at 653; Cothran, 302 F.3d at 283-84. Those statements support the Court's conclusion that his wavier was knowing and voluntary. Freeze's remaining claim, which is that the sentence imposed by the Court exceeded the statutory maximum, clearly falls within the scope of that waiver.[4]

In sum, while Freeze's ineffective assistance claims as to his plea and his claim of incompetency are denied on their merits, his remaining claim falls within the scope of his waiver. Therefore, it is not properly before the Court. See generally Wilkes, supra; White, supra; McKinney, supra. For these reasons, Freeze's § 2255 motion is DENIED in its entirety.

**E. Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Freeze has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an

---

[4] In any event, as noted by the government in its response, his sentence does not exceed the statutory maximum. (See D.E. 60 (citing United States v. Celestine, 905 F.2d 59 (5th Cir. 1990) and United States v. Williams, 919 F.2d 266 (5th Cir. 1990)).

overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right ***and*** that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Freeze is not entitled to a COA as to any of his claims. That is, reasonable jurists could not debate the Court's resolution of his ineffective assistance claim as to the plea and his claim of incompetence. Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of his remaining claim.

**V. CONCLUSION**

For the above-stated reasons, Freeze's motion under 28 U.S.C. § 2255 (D.E. 52) is DENIED WITH PREJUDICE. The Court also DENIES Freeze a Certificate of Appealability.

ORDERED this 7th day of July, 2006.

Janis Graham Jack
United States District Judge